## Anderson, et al. v. Anderson.

(Decided May 16, 1922.)

### Appeal from Owen Circuit Court.

1. Contracts—Cancellation of Instruments—Rescission—Fraud.— While courts do not undertake to make contracts for parties or to set aside their contracts on the sole ground of inadequacy of consideration, yet if the consideration be so grossly inadequate as to make the contract plainly unconscionable as to one of the parties, very little additional evidence of fraud will be required to authorize a rescission.

2. Contracts—Cancellation of Instruments—Rescission—Fraud—Evidence.—In an action by a widow to rescind a contract by which she sold her distributive share in her husband's personal property and her dower in his real estate, evidence held sufficient to show that the contract was induced by fraudulent representations as to the value and extent of her husband's estate.

3. Dower—Conveyances—Validity.—A conveyance of real estate made by one after an agreement to marry, without consideration and without the knowledge or consent of his intended wife, is a fraud on the wife, and will be declared void to the extent that it deprives her of dower in the real estate conveyed, and the fact that the conveyance was made to the mother and sister of the grantor, who were not dependent on him for their support, does not change the rule.

4. Dower—Conveyances—Actions—Evidence.—In a suit by a widow to set aside a conveyance executed by her deceased husband to his mother and sister, evidence held to warrant a finding that the conveyance was executed after the parties had agreed to marry.

JAMES H. SETTLE for appellants.

J. W. CAMMACK, W. A. LEE and A. M. BAKER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

After having worked as a pullman porter for about ten years, D. L. Anderson, Jr., a colored man, returned to Owen county where he engaged in farming. By hard

work, economy and thrift, he acquired considerable property. Besides his personal property, he owned a 65 acre tract of land worth about $2,500.00, a 13 acre tract of land worth about $750.00, and one-third of a farm consisting of a good house and 13 acres of land where he, his mother and sister made their home, worth about $7,000.00, the other two-thirds being owned by his mother and sister.

On December 26, 1917, D. L. Anderson, Jr., in company with his sister Priscilla, went to the Owen county clerk's office for the purpose of procuring, and did procure, a license to marry Elizabeth Fields. On the same day he conveyed to his mother, Lucy Anderson, a life estate in the 65 acre tract of land, and to his sister an undivided one-half interest therein. The next day he and Elizabeth Fields were married and made their home with his mother and sister until his death on April 7, 1919.

On May 28, 1919, Elizabeth Anderson, the widow, entered into a contract with Priscilla Anderson, by which she, in consideration of $100.00 in cash and the assumption by Priscilla of all debts owing by D. L. Anderson, Jr., which were estimated at $400.00, sold and conveyed to Priscilla all her right, title and interest, including dower and homestead, in any and all lands, as well as her interest in any and all personal property owned by D. L. Anderson, Jr., at the time of his death, excepting war saving stamps and money which D. L. Anderson, Jr., had on deposit in the Farmers Bank at Owenton.

A few months later Elizabeth Anderson brought suit against Lucy Anderson and Priscilla Anderson, the mother and sister of D. L. Anderson, Jr., to set aside the contract as well as the conveyance of the 65 acres, on the ground of fraud. On final hearing she was granted the relief prayed for and the defendants appeal.

Though a woman of fair intelligence for one of her race and position, Elizabeth Anderson had spent the greater portion of her life in domestic service and was wholly inexperienced in matters of business. About ten days before the contract was executed, the terms of the trade were agreed on at the home of Cal Anderson, a brother of Priscilla, where Elizabeth had gone in company with Priscilla to get the benefit of Cal Anderson's advice in making the settlement. Cal Anderson made no suggestions as to the fairness or unfairness of the terms, but merely asked Elizabeth if she was satisfied. According to Elizabeth's testimony, Priscilla represented to

her that D. L. Anderson, Jr., owned but little personal property and that his debts amounted to about $400.00. She further said that his entire estate was not worth over $145.00, and that it would not be necessary for Elizabeth to get a lawyer to look after her affairs. Elizabeth also testified that she did not know the character and extent of her husband's estate further than that he owned certain personal property. Priscilla denies that she made any such representations to Elizabeth, but says that Elizabeth herself wanted to settle the matter without going to court and stated that she did not wish to get a lawyer. A few days later the parties sent for an attorney who came and prepared the agreement in accordance with the terms theretofore agreed upon. The attorney testified that before writing the contract he asked Elizabeth if she understood her rights under the law, and told her that as widow she was entitled to $750.00 in money, or personal property if upon hand, if not, nothing in lieu thereof, and that she was also entitled to a life interest in one-third of the real estate owned by her husband at his death. He further told her that the debts owing by her husband did not in any manner affect her right to dower, unless the land was under mortgage or purchase lien, or there was something of that kind against her. In this statement he was corroborated by Priscilla and Cal Anderson, while Elizabeth claims that he did not explain her rights under the law and that she did not understand them.

It is the contention of appellants that as Elizabeth and her husband had been married for over a year, it is altogether improbable that she did not know what property her husband owned, and that the overwhelming weight of the evidence is to the effect that her rights under the law were fully explained to her before the contract was executed. As the personal estate of her husband was of less value than $750.00, and property to that amount was exempt to Elizabeth as a widow, and she had not joined in any deed or mortgage encumbering her dower in her husband's real estate, neither her distributive share in her husband's personal estate, nor her dower in his real estate was subject to the payment of her husband's debts. That being true, the agreement of Priscilla to pay the debts operated only for her own benefit, and not for the benefit of Elizabeth. Therefore, the case is one where her interest in her husband's estate amounted to several hundred dollars and she sold it

for only one hundred dollars. While courts do not undertake to make contracts for parties, or to set aside their contracts on the sole ground of inadequacy of consideration, yet, if the consideration is so grossly inadequate as to make the contract plainly unconscionable as to one of the parties, very little additional evidence of fraud will be required to authorize a rescission. It is doubtless true that the attorney attempted to explain to Elizabeth her rights in her husband's property, but, if prior to this, she had been led to believe that he had no property, the explanation was of but little value. Even now Priscilla is claiming that her brother owned practically no personal property at the time of his death. In view of this claim at the present time, it is by no means probable that she did not make the same claim when she came to settle with Elizabeth, as well as the claim that his entire estate was of but little value. One thing is certain: Elizabeth never would have sold property worth several hundred dollars for only one hundred dollars if she had known the truth, and a consideration of the entire record leads us to believe that she was induced to make the contract by misrepresentations as to the value and extent of her husband's estate.

Appellants further contend that the court erred in setting aside the conveyance of the 65 acres. It has long been the settled rule in this state that a conveyance of real estate made by one after an agreement to marry, without consideration and without the knowledge or consent of his intended wife, is a fraud on the wife and will be declared void to the extent that it deprives her of dower in the real estate conveyed. Petty v. Petty, 4 B. Mon. 215, 39 Am. Dec. 501; Murray v. Murray, 90 Ky. 1, 13 S. W. 244. But it is argued that the only evidence showing that D. L. Anderson, Jr., and Elizabeth were engaged was that of Elizabeth herself, who was not a competent witness. We do not have to rely upon Elizabeth's evidence to show that the marriage agreement had been made at the time the deed was executed. In testifying for herself and daughter, Lucy Anderson said that her son told her that he was going to marry. She said, "Bud, you are not going to marry and leave me out of doors." He said, "I am going to deed you that 65 acres of land, you and Priscilla." He and Priscilla then went to town. The deed was executed and the license was obtained at the same time. The following day he and Elizabeth were married. It is not probable that he would have gone to

town and obtained the license unless he and Elizabeth had already agreed to be married. In our opinion, this evidence alone was sufficient to show that the conveyance was made after the marriage agreement.

But it is also insisted that the conveyance is not fraudulent because D. L. Anderson, Jr., had the right to make suitable provision for his mother and sister out of his estate. We have held that it was not a fraud on the rights of the wife for the husband to convey a portion of his estate to his children by a former marriage, where the provision so made was reasonable and no more in amount than a father in his pecuniary condition might naturally be expected to give his children by way of advancement. Goff v. Goff's Exors., 175 Ky. 75, 193 S. W. 1009. Whether the exception should be extended so as to include a conveyance made by a son to his dependent mother and sister need not be determined. In this case the mother and sister each had a substantial estate of her own, and neither was dependent on the grantor. That being true, the fact that the deed was made to his mother and sister does not change the rule.

It is clear from the evidence that there was no consideration for the conveyance. It was made without the knowledge or consent of the wife, and on the very eve of their marriage. It covered almost half of the grantor's real estate. These circumstances were sufficient to sustain the finding of the chancellor that the conveyance was a fraud on the wife.

Judgment affirmed.